UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JUAN RAMON GUZMAN,

                    Petitioner,

    v.

JESSICA SAGE,

                    Respondent.

CIVIL ACTION NO. 3:26-CV-01194

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Juan Ramon Guzman ("Guzman") brings this petition for writ of habeas corpus. (Doc. 1). On May 5, 2026, Guzman filed the instant petition, requesting that Respondent Jessica Sage[1] release him from custody at the Federal Correctional Institution Lewisburg ("FCI Lewisburg") in Lewisburg, Pennsylvania or provide him with a bond hearing before a neutral arbiter. (Doc. 1, at 6). On May 13, 2026, Sage filed a response to Guzman's petition. (Doc. 6). Guzman did not file a timely traverse. For the following reasons,

---

[1] Pursuant to the "immediate custodian rule," the proper respondent in this case is Jessica Sage ("Sage"), Warden of FCI Lewisburg. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Guzman is detained at FCI Lewisburg, Sage is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. However, the government will be bound by the Court's judgment because Sage is acting as an agent of the federal government by detaining Guzman on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

Guzman petition (Doc. 1) is **GRANTED**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Guzman's petition, Sage's response, and the exhibits thereto. (Doc. 1; Doc. 6). Guzman is a citizen of El Salvador, who entered the United States without inspection, admission, or parole on or about January 1998 at or near Brownsville, Texas. (Doc. 6-3, at 2). On May 4, 1990, Guzman applied for status as a temporary resident, which Immigration and Naturalization Services ("INS") approved on July 17, 1992. (Doc. 6-3, at 2). On April 12, 1993, Guzman applied to adjust his status from temporary to permanent resident, which the INS approved on December 5, 1996. (Doc. 1, at 1; Doc. 6-3, at 2). On April 15, 1996, the 185th District Court of Harris County, Texas convicted Guzman of burglary of a motor vehicle with intent to commit theft. (Doc. 6-3, at 2). On March 12, 1998, the INS issued Guzman a notice to appear, and on May 15, 1998, the INS removed Guzman from the United States to El Salvador based on a final order of removal. (Doc. 6-3, at 2). The INS prohibited Guzman from reentering the United States at any time. (Doc. 6-4, at 4).

On an unknown date, Guzman reentered the United States without inspection, admission, or parole. (Doc. 6-3, at 2). On June 21, 2019, Guzman was arrested by the Suffolk County Police Department, where ICE served him with a notice of intent/decision to reinstate his 1998 removal order. (Doc. 1, at 1; Doc. 6-2, at 2; Doc. 6-4). On September 4, 2025, Enforcement and Removal Operations encountered Guzman at the Federal Correctional Institution Fort Dix. (Doc. 6-3, at 2). On September 22, 2025, ICE took Guzman into immigration custody. (Doc. 1, at 1; Doc. 6-8, at 3). On December 29, 2025, an immigration judge denied Guzman's request for withholding of removal. (Doc. 6-8, at 3).

2

Guzman timely appealed the withholding of removal to the Board of Immigration Appeals ("BIA"), which remains pending. (Doc. 6, at 3; Doc. 6-8, at 4). On January 31, 2026, ICE received the travel documents necessary for Guzman's removal to El Salvador. (Doc. 6-8, at 3).

## II.   LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d

387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal is unreasonable and ordering release).

### III.   JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil*, 164 F.4th at 277-79 (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas v.*

4

*Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil,* 164 F.4th at 278-79 (finding that length of confinement claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Guzman's detention has become unconstitutionally prolonged and unrelated to the purpose of removal. *Jennings,* 583 U.S. at 294; *Kahlil,* 164 F.4th at 274-79; *Zadvydas*, 533 U.S. at 688.

## IV.    DISCUSSION

Guzman contends that his eight-months of immigration detention is pursuant to 8 U.S.C. § 1226(c) and has become unconstitutionally prolonged. (Doc. 1, at 3). Guzman avers that his ongoing detention violates the Due Process Clause of the Fifth Amendment and that he is entitled to a bond hearing. (Doc. 1, at 5). Guzman provides that his detention is likely to continue because his withholding of removal proceeding is pending. (Doc. 1, at 3).

Sage counters that Guzman is properly detained under 8 U.S.C. § 1231, not § 1226(c), because ICE reinstated Guzman's final order of removal. (Doc. 6, at 1). Sage submits that pursuant to § 1231(a)(6), Guzman is not entitled to a bond hearing. (Doc. 6, at 9). Sage also avers that Guzman should not be released from custody because he cannot meet his burden to demonstrate that there is not a significant likelihood of his removal in the reasonably foreseeable future. (Doc. 6, at 9). Sage provides that while detained Guzman has received and will continue to receive custody determinations, which Sage contends is the required due process protection for Guzman under the INA. (Doc. 6, at 12). Sage submits that the

5

government has received the travel documents required to execute Guzman's removal to El Salvador. (Doc. 6, at 11). Sage avers that should the BIA affirm the immigration court's denial of Guzman's petition for withholding of removal, Guzman will be removed in the reasonably foreseeable future. (Doc. 6, at 12).

Section 1226(c) of the INA provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(c). When detention under § 1226(c) reaches an unreasonably prolonged duration, the petitioner-detainee is entitled to a bond hearing at which the government bears the burden to show, by clear and convincing evidence, that the petitioner-detainee would likely flee or pose a risk to the community if released. *German Santos v. Warden Pike Cnty Corr. Facility*, 965 F.3d 203, 210-11, 214 (3d Cir. 2020). Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6). Noncitizens detained under § 1231 are not entitled to a bond hearing; however, they are entitled to supervisory release if the government has failed to remove them in a reasonable period and they can show that there is not a significant likelihood of their removal in the reasonably foreseeable future. *Johnson v. Guman Chavez*, 594 U.S. 523, 526 (2021); *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001).

6

Congress also created an expedited process for the removal of noncitizens who reentered the United States without authorization after having already been removed. 8 U.S.C. § 1231(a)(5); *Johnson*, 594 U.S. at 529. Section 1231(a)(5) of the INA provides that,

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.
>
> 8 U.S.C. § 1231(a)(5)

While noncitizens with a reinstated order of removal are not subject to discretionary relief under the INA, noncitizens with reinstated orders of removal can pursue withholding-only relief to prevent the Department of Homeland Security from executing their removal to the particular country designated in the reinstated removal order. 8 U.S.C. § 1231(a)(5); *Johnson*, 594 U.S. at 530.

In *Johnson v. Guzman Chavez*, 594 U.S. 523, 542 (2021), the Supreme Court determined that 8 U.S.C. § 1231, not § 1226(c), applies to noncitizens with reinstated orders of removal, whose withholding of removal proceedings are ongoing. The Supreme Court reasoned that because the withholding of removal process is country specific and does not preclude removal to another country, the withholding proceeding is separate from the removal proceeding for a noncitizen with a reinstated order of removal. *Johnson*, 594 U.S. at 531-32, 534; *Inestroza-Tosta v. Attorney General*, 105 F.4th 499, 513 (3d Cir. 2024); *Guerrero-Sanchez v. Warden York Cnty Prison*, 905 F.3d 208, 219 (3d Cir. 2018). As such, while the withholding-only proceeding is ongoing, the removal proceeding is not, and with a reinstated final order of removal, noncitizens are properly detained under § 1231. *Johnson*, 594 U.S. at 531-32, 534; *Inestroza-Tosta*, 105 F.4th at 513; *Guerrero-Sanchez*, 905 F.3d at 219.

Noncitizens with reinstated orders of removal are therefore ineligible for bond, but they are eligible for supervisory release if they can show that removal is not likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701; *Pina v. Castille*, No. 16-4280, 2017 WL 935163, at *8-*9 (D.N.J. March 9, 2017) (finding that the rights of a noncitizen with a reinstated order of removal are governed by the post-removal-order standards of *Zadvydas*); *Delcid-Santos v. Soto*, No. 26-1382, 2026 WL 636814, at *2-*3 (D.N.J. March 6, 2026) (finding same); *Albernaz v. Soto*, No. 26-cv-942, 2026 WL 632541, at *2 (D.N.J. March 6, 2026) (finding same).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether such post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumed reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six-month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable and order release. *Zadvydas*, 533 U.S. at 699-

8

700. Courts in the Third Circuit have found that delays due to the backlog of cases in the immigration courts threaten indefinitely prolonged periods of detention, rendering removal not reasonably foreseeable. *Dudamel v. Jamison*, No. 26-361, 2026 WL 498612, at *7 (E.D. Pa. Feb. 23, 2026); *Ologbenla v. Lowe*, No. 3:25-cv-1351, 2025 WL 2375272, at *3 (M.D. Pa. Aug. 14, 2025); *see Khalil v. Joyce*, 780 F. Supp. 3d 476, 524 n. 50 (D.N.J. 2025).

While Guzman's withholding of removal proceedings are ongoing, his removal proceedings are complete, and he is properly detained under 8 U.S.C. § 1231. *Johnson*, 594 U.S. at 531-32, 534; *Inestroza-Tosta*, 105 F.4th at 513; *Guerrero-Sanchez*, 905 F.3d at 219. Guzman has been detained under § 1231 for over eight months, so his presumptively reasonable six-month period of § 1231 detention has run. (Doc. 1, at 1; Doc. 6-2, at 2; Doc. 6-4; Doc. 6-8, at 3); *Zadvydas* 533 U.S. at 701. By providing evidence that his request for withholding of removal is pending on appeal, Guzman has shown good reason to believe removal is unlikely in the reasonably foreseeable future. (Doc. 1, at 3).

Sage fails to rebut Guzman's showing by providing evidence that El Salvador has produced a travel document for Guzman's removal. (Doc. 6-8, at 4). Sage avers that "should the BIA affirm the Immigration Court's decision, Petitioner will be removed," but Sage gives no indication that the appeal of Guzman's withholding of removal decision will be resolved in the reasonably foreseeable future. (Doc. 6, at 11-12). The backlog of pending cases appealed to the BIA indicates that Guzman could remain detained for several months beyond his eight months of § 1231 detention. At the end of the first quarter of 2026, the BIA had 219,945 appeals pending. Executive Office for Immigration Review Adjudication Statistics, Executive Office for Immigration Review, Statistics and Reports, https://www.justice.gov/eoir/media/1344986/dl?inline (last visited June 12, 2026). Even if

the BIA affirms the immigration court's denial of Guzman's request for withholding of removal, Guzman has the right to appeal such a decision to the Third Circuit, which would further extend Guzman's § 1231 detention beyond a reasonable removal period. *See*, *e.g.*, *Inestroza-Tosta*, 105 F. 4th 499, at 509. Given the ongoing withholding of removal proceeding, there is not a significant likelihood that Guzman will be removed in the reasonably foreseeable future. (Doc. 6, at 3); *see Dudamel*, 2026 WL 498612, at *7; *see Ologbenla*, 2025 WL 2375272, at *3; *see also Khalil*, 780 F. Supp. 3d at 524 n. 50. Accordingly, Guzman's petition for writ of habeas corpus is **GRANTED**. (Doc. 1).

V.      CONCLUSION

For the foregoing reasons, Guzman's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Sage is **ORDERED** to release Guzman from custody under appropriate conditions of supervisory release. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: June 15, 2026                    /s/ *Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **United States District Judge**

10